FILED

2017 Mar-27  PM 03:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL JAMES CRAIG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  2:14-cv-00503-LSC-JEO |
| | ) | |
| ALABAMA DEPARTMENT OF CORRECTIONS, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

The magistrate judge entered a report on December 5, 2016, recommending all claims against all defendants be dismissed without prejudice pursuant to 28 U.S.C. § 1915A(b) for failing to state a claim upon which relief can be granted, with the exception of the following:

(1)  the First Amendment retaliation claims against defendants Brown and Headley,

(2)  the First Amendment conspiracy to retaliate claims against defendants Brown, Sanders and Richie, and

(3)  the Procedural Due Process claims related to the plaintiff's indefinite isolation segregation against defendants Glass, Despane, White, Hetzel, Bonner, Stinson, Hicks, Specks and Miree.

(Doc. 19).  The magistrate judge further recommended the remaining claims be referred back to the magistrate judge for further proceedings.  (*Id.* at 84).  The plaintiff filed objections to the report and recommendation.  (Doc. 20).  He objects

to the recommended dismissal of: (1) his claims for monetary damages against the defendants in their official capacities, and (2) his Eighth and Fourteenth Amendment claims for psychological damages against defendants Sanders, Headley, Davenport, Culliver and Thomas for their deliberate indifference to the unsafe and undersecured dorm in which he was housed at St. Clair Correctional Facility in 2011-2012.  (*Id.*).

## I.   OBJECTIONS

### A.   Objection to the recommended dismissal of the claims for monetary damages against the defendants in their official capacities

Although his argument is somewhat incoherent, the plaintiff seems to suggest the magistrate judge only considered his claims for monetary damages against the defendant Alabama Department of Corrections' employees in their official capacities, when he in fact sued these defendants for monetary damages in their official and individual capacities.  (Doc. 20 at 1-3).  The plaintiff also argues he can seek monetary damages from the defendants in their official capacities if they "abused their official capacities," citing "Article 4, Section 108 of" the 1901 Alabama Constitution and Code of Alabama, 1975, §§14-3-1, 14-3-50, and 14-11-4.  (*Id.*).

The plaintiff is incorrect on both counts.  First, the magistrate judge considered the plaintiff's claims for monetary damages against the defendants in their official *and* individual capacities.  Second, and no matter how the plaintiff

attempts to characterize it, the defendants are entitled to Eleventh Amendment immunity from damages liability to the extent they are sued in their official capacities.  *See Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (Art. I, Sec. 14, of the Alabama Constitution provides that "the State of Alabama shall never be made a defendant in any court of law or equity"); *Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 71 (1989) (a lawsuit against a state official in his official capacity is the same as a lawsuit against the state itself).  As far as injunctive relief, the plaintiff is no longer incarcerated at any of the facilities made the subjects of his complaints.  Therefore, his requests for injunctive relief are moot.

**B.**      **Objection to the dismissal of the Eighth and Fourteenth Amendment conditions of confinement claims against defendants Sanders, Headley, Davenport, Culliver and Thomas for deliberate indifference to his undersecured and unsafe dorm at St. Clair County Correctional Facility in 2011 and 2012.**

   **1.**      **Objections based on the Alabama Constitution, Alabama Statutory law, and Administrative Regulations**

The plaintiff points to "Art. I Sec. 15" of the Alabama Constitution and "Alabama Penal" Code §§ 14-3-1, 14-3-50, 14-3-51, and 14-11-4.  (Doc. 20 at 3).[1] He then objects "to the 'asinine, subjective, conclusionary (sic) myth,' cloaked in

---

[1] Although the plaintiff argues throughout his objections that he "cited" to various matters in his pleadings, the plaintiff makes no effort to instruct the court where these citations are in his pleadings by document and page number.

legal jargon,"[2] that he did not state a plausible cruel and unusual punishment claim concerning the lack of security in Q1 dorm St. Clair Correctional Facility (SCCF) in 2011 and 2012.  (*Id.* at 3) (citing Doc. 19 at 25 'report and recommendation').  In support of the same objection, the plaintiff also declares he cited numerous Alabama Department of Corrections Administrative Regulations.  (*Id*. at 4, 6).

### a.      Article 1, Section 15, Alabama Constitution

The plaintiff did <u>not</u> rely upon Article 1, Section 15 of the Alabama Constitution in connection with his claims about the 2011-2012 unconstitutional conditions of his confinement in SCCF's Q1 dorm. The only mention of the Alabama Constitution appears in the plaintiff's second amended complaint, where he perfunctorily declares that a Jefferson County Circuit Court Judge sentenced him to life in prison with the possibility of parole "[p]ursuant to Article I-Section 6, Alabama 1901 Constitution."  (Doc. 13 at 11).  Additionally, Article 1, Section 15 of the Alabama Constitution provides "[t]hat excessive fines shall not be imposed, nor cruel or unusual punishment inflicted."  Thus, it is superfluous to the plaintiff's Eighth Amendment claim.

---

[2] While the plaintiff may make good faith arguments to point out any error(s) of fact or law, he is advised that scurrilous commentary is not appropriate and should not be made in any future pleadings.

### b.      Alabama Code §§ 14-3-1, 14-3-50, 14-3-51, 14-11-4[3]

The plaintiff did <u>not</u> mention Alabama Code §§ 14-3-1, 14-3-50, 14-3-51, and 14-11-4 in his complaints.  Thus, the statutes cannot be used to argue errors of fact or law in the magistrate judge's report and recommendation.

The plaintiff did request the court pursue federal criminal charges against defendant Culliver and the other defendants, but in so doing wrote, "All A.L.D.O.C. Corrections officers, pursuant to Ala. Code 1975-Title 41 & 14," are "classif[ied] as 'peace officers,' with powers to arrest."  (Doc. 1 at 69-70).  He declares Culliver and other defendants failed to report that defendants Sanders and Headley withheld evidence in the John Rutledge murder investigation, in violation of "§14-3-9, Ala. Code, 1975."  (*Id.* at 70).  Section 14-3-9 sets forth criminal penalties for correctional employees who fail "to report all violations of the law relating to prisons."

Regardless, this court has no authority to refer the defendants for federal or state criminal prosecution.  To the extent the plaintiff may be attempting to argue that citation to several state criminal penalties satisfies his burden to state a

---

[3]  The criminal penalties set forth in Alabama Code §§ 14-3-1, 14-3-50, and 14-3-51 were repealed effective April 15, 2015.  Section 14-11-4 "allows criminal penalties for '[a]ny guard . . . having the charge, management or control of any convict who fails to discharge any of the duties imposed upon him by law."  *Laube v. Campbell*, 215 F.R.D. 655. 658 (M.D. Ala. Mar. 27, 2003).

sufficient factual basis for his conditions of confinement claim at SCCF, his objections are overruled.  Blanket citations to statutory penal code sections are inadequate substitutes for the specific factual allegations necessary to set forth an Eighth Amendment conditions of confinement claim.

### c.      Objections based on Administrative Regulations

The plaintiff argues the magistrate judge erred in reporting he "did not cite any specific law, or regulation, on 'guards failing to secure dorms [and] be on their posts." (Doc. 20 at 6).  He asserts that he cited several provisions of the Alabama Department of Corrections' Administrative Regulations (AR) to support his conditions of confinement claim: (1)  AR "18, 'Accountability logs;'" (2) AR 201, 'Personnel Files;'" and (3) AR "208-Sec. V, # 28, 'Officer Posts.'" (Doc. 20 at 4, 6).  The plaintiff makes the incoherent and conclusory argument that the "regulations cited, are legally bound by 'color of state law,' via-Administrative Procedures Act-Ala. Code Title 41," and the criminal penalties addressed in section I.B.1.b. *supra*.  He declares he presented these citations to support his allegations that "guards were not on their 'posts'" when John Rutledge was murdered in April 2012 and he was robbed in May 2012, but the guards were given "zero reprimands . . . for failing in their duties to guard and protect." (*Id.* at 4). The plaintiff declares, "If that is not stating a legitimate claim, of 'supervisory

retention,' 'neglect,' and 'deliberate indifference'" that can be substantiated by records, "then what is?" (*Id.* at 5).[4]

First and foremost, the plaintiff's objections alter the actual allegations he made in his complaint. The plaintiff did <u>not</u> allege in his complaint that John Rutledge was murdered in April 2012 and he was robbed in May 2012 because the officers on duty abdicated their posts and were not reprimanded for their failures.[5] Instead, the complaint alleges these incidents occurred because Q1 dorm had "zero hall rovers at a desk 24 hours per day, and floor rovers only come through to conduct shakedowns for contraband, count, [and] occasionally . . . dorm security walk through[s]." (Doc. 1 at 6). Indeed, that allegation is the linchpin of his claim that Q1 dorm was undersecured, because he compares the security level afforded population dorms such as Q1 dorm to the "heavily secured" honor dorms, and declares that the ADOC "has a mandated [and] constitutional duty" to provide the population dorms with the same type of security afforded the honor dorms, *i.e.*, "a rover at [a] desk in the hall at all times, [and] rovers who frequent the floors." (*Id.*).

---

[4] 'Neglect' is not a legal claim. Since the plaintiff's objections are based on the Eighth and Fourteenth Amendments, it appears he means 'supervisory liability' when he refers to "supervisory retention." Nonetheless, and to the extent 'supervisory retention' is an objection based on state law grounds, the court addresses the objection in section II. B.4., *infra*.

[5] In addition to his failure make these allegations, the plaintiff did not identify as defendants the officer(s) who were on duty at the time he was robbed of his store goods or make any Eighth or Fourteenth Amendment claims against those officers.

Second, it is false that the plaintiff cited in his complaints to the specific Administrative Regulations he now presents in his objections.  He did <u>not</u>.

Finally, the plaintiff has mischaracterized the recommendation, as the magistrate judge never reported the plaintiff had failed to "cite any specific law, or regulation, on 'guards failing to secure dorms [and] be on their posts," as the plaintiff now argues.  (Doc. 20 at 6).  The magistrate judge did point to the plaintiff's allegation that Lt. Graham admitted during questioning at his January 12, 2013, disciplinary hearing that "St. Clair dorms L through Q did 'not have security rovers, at all times, on the floor, as required by legal standards.'"  (Doc. 19 at 17) (quoting Doc. 1 at 14).  The magistrate judge also correctly reported the plaintiff did not detail "the source of these standards," but did assert "staff accountability logs" would "corroborate [Graham's] testimony."  (*Id.*).

Having clarified the record in addressing the foregoing objections, the court turns to the plaintiff's argument that he stated a plausible Eighth Amendment claim.

**2.      Objections based on whether a plausible Eighth Amendment conditions of confinement claim has been alleged**

**a.      Objective prong- constitutional deprivation**

The plaintiff argues his pleadings contain "specific detailed incidents" sufficient to show Q1 dorm was undersecured and unsafe from 2011-2012 *and* "beyond the time" period "of Q1," which the court interprets as referring to the

8

plaintiff's SCCF dorm housing prior to 2011-2012.  (Doc. 20 at 3-5).[6]  The court begins first with Q1 dorm years 2011 and 2012, the years for which the plaintiff expressly requests damages (doc. 1 at 61) and the years examined by the magistrate judge.

### i.      Q1 Dorm: 2011-2012

In his objections, the plaintiff points to the April 2012 murder of John Rutledge in Q1 dorm and the May 2012 robbery of his store goods in Q1 dorm, both of which occurred "while zero guards were nowhere to be found for 'hours.'" (Doc. 20 at 4).  He declares accountability logs will show the assigned guards were not on post during these two incidents, nor were they reprimanded for their failures.  (*Id.*).  However, as set forth *supra*, the plaintiff did not make this particular allegation concerning the accountability logs in his pleadings.

The magistrate judge considered the April 2012 Rutledge murder and the plaintiff's May 2012 robbery when analyzing the plaintiff's allegations that Q1 dorm was undersecured and unsafe during 2011 and 2012, the years for which the plaintiff claims damages for psychological injury.  (Doc. 19 at 29; Doc. 1 at 61). The magistrate judge also reported the plaintiff's allegation that he "witnessed countless, brutal violent incidents where inmates were left unsupervised, to

---

[6] To the extent the plaintiff is suggesting a time period after 2012, he admits he was no longer incarcerated at SCCF after 2012.  Thus, SCCF conditions after 2012 are immaterial and irrelevant to his claims, and he cannot rely on ADOC incident reports and files created, news reports published, or a Department of Justice investigation initiated "since" *i.e.*, at some unknown time after his "lawsuit" was filed in March 2014, to support this claim.  (Doc. 20 at 7).

become mere 'batons of unchecked violent pupils,'" but determined the plaintiff had revealed no other specific incidents in Q1 dorm other than the two already discussed.   (Doc. 19 at 27, 29).   The magistrate judge recommended these allegations were insufficient to establish "'omnipresent inmate on inmate violence, *i.e.* unsafe conditions, . . . in Q1 dorm during the applicable time period." (Doc. 19 at 29).

The magistrate judge excluded the October 15, 2011, death of inmate Jabari Bascomb at SCCF from the specific facts alleged by the plaintiff on the grounds he did not allege the murder occurred in Q1 dorm.  (Doc. 19 at 29 n. 4) (citing Doc. 1 at 23).  The plaintiff does not dispute the Bascomb murder did not occur in Q1 dorm, but has generally objected on the basis that he did provide specific facts to support this Eighth Amendment claim.[7]

This court is of the opinion that restricting the plaintiff's claims of pervasive violence and lack of security to the plaintiff's 2011 and 2012 predicament in Q1 dorm is too narrow an approach.  Since it is important for the plaintiff to show the fear of constant violence is 'pervasive,' the court's focus should be broadened to all population dorms, as the plaintiff alleges all SCCF population dorms had the same lax security as his own.   Taking a liberal approach to the plaintiff's

---

[7] This court has independently reviewed the plaintiff's pleadings and finds that the plaintiff also declares inmate Jamie Bell was murdered, but does not state when it occurred.  (Doc. 13 at 12). Therefore, it shall not be considered.

pleadings, the court finds the plaintiff's allegations concerning the Bascomb murder in October 2011 should be considered in connection with the objective prong of the plaintiff's Eighth Amendment claim.

As for the plaintiff's reliance on the accountability logs to support the allegations he *actually* presented in his complaint, the magistrate judge accepted, as does this court, the plaintiff's representation that the logs would show Q1 dorm did "'not have security rovers, at all times, on the floor.'"  (Doc. 19 at 17) (quoting Doc. 1 at 14).  The plaintiff did not specifically object to the magistrate judge's report that he "does not declare that rovers were *never* stationed for any time periods in the Q1 dorm hall, and . . . provides no detail as to what he means by the 'occasional' walk-throughs in Q1 dorm versus the 'frequent' walk-throughs conducted in the honor dorm."  (*Id.* at 31).  Instead, he alters his allegations, asserting the lack of security existed because guards do not man their posts, but are given "zero reprimands . . . for failing in their duties to guard and protect."  (Doc. 20 at 4).

The 'lack of security' allegations in the plaintiff's pleadings are almost irreconcilable with the altered allegations in the plaintiff's objections.  Not once in his pleadings did the plaintiff simply declare that the factual basis for the alleged lack of security is that guards did not man their assigned posts but were not reprimanded for it.  What the plaintiff is really doing in his objections is asking the

court to substitute the allegations in his objections for those in his complaint, or accept that the allegations in his objections are what he *meant* by the allegations in his complaint.  The court will, in this one instance, accept that the allegations in the objections are a clarification of what the plaintiff meant in his pleadings.

As such, the factual allegations supporting the lack of security are follows. Although the population dorms and honor dorms were officially assigned the same security levels: (1) repeated inmate-on-inmate incidents occurred in the unsafe population dorms because security officers habitually failed to man their assigned posts, thus notifying the defendants of the need to correct the issue, or (2) in reality, maintaining lax security in the unsafe population dorms was the custom or policy of the defendants.  *See Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).[8]

### ii.     Beyond the time period in Q1

The plaintiff argues he "cited, precise, pleaded facts," as to how long he lived in such" an "environment at St. Clair, beyond the time period of 'Q-1.'" (Doc. 20 at 5).  He points to inmate Michael Costello, who was assaulted for hours at SCCF in 2006 or 2007 "while guards left the dorm he was in 'unguarded,' and the cube officer slept."  (*Id.* at 9).  In his second amended complaint, the plaintiff

---

[8] The court acknowledges these scenarios include the causation element of the plaintiff's supervisory liability claim against the defendants.  Nonetheless, it illustrates the only possible reconciliation between the pleadings and the objections as to the factual basis for the alleged lack of security.

describes the almost three hour inmate-on-inmate assault Costello endured because there were "zero guards inside the dorm" and the cube officer was sleeping. (Doc. 13 at 12). He offers this fact to support his allegation that "'guards do not rover the dorms 24 hours a day.'" (*Id.*).

Although not specifically mentioned in his objections, the plaintiff also alleges in his second amended complaint that he was being housed in a segregation unit on May 28, 2009, when a mentally ill SCCF inmate named Bassett stabbed him in the shower because the cubicle officer decided to allow inmates to shower without the presence of a security guard. (*Id.* at 13). The plaintiff could have chosen to forego a shower, but decided to go ahead because it would be two days before he was afforded another opportunity. (*Id.*). According to the plaintiff, Bassett was "a known 'lunatic' willing to cut his own penis off [just a week before he stabbed the plaintiff,] yet was housed among regular inmates." (*Id.*). The plaintiff declares that were he to submit affidavits, they will show "officers [were] buying knives from Bassett for trade for tobacco products." (*Id.*). The plaintiff had to write I & I himself to report the stabbing, and most of the SCCF officials attempted to downplay the incident (even to the point of initially denying the plaintiff a body chart to document his injuries). (*Id.* at 14). The plaintiff does not seek damages for the 2009 stabbing, but presents it to show that violence and lack of security at SCCF in 2011 and 2012 was not an anomaly. (*Id.*).

The court finds that these two incidents should not be considered when analyzing whether the SCCF population dorms were pervasively violent and undersecured in 2011-2012. The incidents are isolated, the 2006-2007 Costello incident is remote from the time period made the basis of his complaint, and the plaintiff's May 2009 stabbing did not occur in the SCCF population dorms, but in a segregation unit.

### iii.   Conclusion

"A prisoner has a right to be protected from the constant threat of violence." *Jones v. Diamond*, 636 F.2d 1364, 1373 (5th Cir. 1981).[9]  "'A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror."  *Shrader v. White,* 761 F.2d 975, 978 (4th Cir. 1985) (quoting *Withers v. Levine,* 615 F.2d 158, 161 (4th Cir. 1980)).   The court finds the plaintiff has alleged enough specific facts to plausibly satisfy the objective prong of his conditions of confinement claim at SCCF from 2011 to 2012.   Additionally, the plaintiff asserts  "complete discovery" of the Alabama Department of Corrections' internal files will provide corroborative evidence of "the perpetual, hazardous, life-threatening, unguarded" conditions he suffered at SCCF in 2011-2012.  (Doc. 13 at

---

[9] The Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions issued prior to October 1, 1981, *Bonner v. City of Prichard*, 661 F.2d 1206,1209 (11th Cir. 1981) (en banc).

14

14).  "[W]here a pro se pleading alleges specific facts, it should not be dismissed unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Riley v. Jeffes,* 777 F.2d 143, 148 (3rd Cir. 1985) (quoting *Haines v. Kerner,* 404 U.S. 519, 520 (1972) (internal citation omitted)).  The plaintiff has provided specific facts to support the objective prong of this claim.

### b.    Subjective Prong - Deliberate Indifference

The magistrate judge read the plaintiff's complaints to allege that Captain Sanders, Warden Headley, Warden Davenport, Director/Coordinator Grant Culliver and Prison Commissioner Kim Thomas "became fully aware" of the lack of security at SCCF "after acknowledgment of back to back periodic violent incidents" in "G-yard" dormitories, including the October 2011 murder of Jabari Leon Bascomb and the John Rutledge murder in April 2012.  (Doc. 19 at 27-28, 31) (citing Doc. 1 at 23-24, 59; Doc. 13 at 11).  However, according to the plaintiff, these defendants "were deliberately indifferent because, unlike inmates in the drug program and honor dorms, they did not station a rover at a desk in the hall of Q1 dorm at all times, and the rovers did not frequent the floors as often."  (Doc. 19 at 28) (citing Doc. 1 at 6, 24).

The court has found one additional allegation concerning defendant Thomas in the plaintiff's complaint.  He alleges that Thomas, "since the beginning of his

tenure, ... has fully known, the unsafe conditions at St. Clair, and understaffing, leaving dorms vulnerable, adversely becoming havens of violence." (Doc. 1 at 60). The plaintiff does not provide any specific facts to support this assertion. In any event, the magistrate judge reported Prison Commissioner Kim Thomas' response to the unsafe conditions at St. Clair was to tour the facility with press members in March 2012, and issue a press release in June 2012 declaring budget cuts and underfunding were the cause of the conditions. (Doc. 19 at 31) (citing Doc. 1 at 59-60).

The magistrate judge reported the plaintiff had "made no mention" of any particular response from Captain Sanders, Warden Headley, Warden Davenport and Director Grant Culliver. (*Id.*). Instead, he determined that the plaintiff had alleged Thomas received additional funding during 2012, but there were "zero significant changes in the areas of understaffed, undersecured dorms." (Doc. 19 at 31) (quoting Doc. 1 at 60).

The magistrate judge concluded the plaintiff had failed to establish the defendants were both aware of a substantial risk of harm to him in Q1 dorm, and failed to reasonably respond to that risk. (Doc. 1 at 33). He wrote,

> The plaintiff describes no particular incident(s) of inmate on inmate violence in Q1 dorm after April 27, 2012, but even if the court presumes further incidents occurred, the plaintiff has not alleged facts to establish that the response by each defendant was not reasonable. Instead, he asserts the changes made were insignificant, but does not set forth what those changes were or associate any of the defendants

16

with the changes.  He asks the court to decide that the unknown changes were unreasonable because the plaintiff's desired method of correcting the problem, which he states is required by an unidentified legal standard, was not adopted.  This the court cannot do.  Indeed, the only incident described by the plaintiff post-April 2012 is that he was robbed but not harmed in May 2012, and Captain Sanders immediately punished the perpetrators with isolation and validated them as enemies.  (Doc. 13 at 16).

Further, while the plaintiff was initially unsuccessful in applying for the honor dorm, after he completed an entry prerequisite in late October 2012, Warden Headley approved his transfer.  (Doc. 1 at 7-8).  The plaintiff did not return to a population dorm at St. Clair after October 2012[.]

(Doc. 19 at 32).

In his objections, the plaintiff argues the magistrate judge "obfuscat[ed]" and "blatantly ignor[ed]" facts because he alleges in his complaints that the defendants "were fully aware of the" unsafe and undersecured conditions at SCCF for "seven years" prior to inmate Rutledge's April 2012 murder and his robbery in May 2012. (Doc. 20 at 9).  The plaintiff did not make such a clear statement in his pleadings, and the court is at a loss as to how he arrived at the figure.

Nonetheless, as set out in the previous subsection, in his second amended complaint, the plaintiff did point to the 2006-2007 assault of inmate Michael Costello.  (Doc. 13 at 12).  In his objections, the plaintiff declares he did so to show defendant Sanders, an administrator at the time, knew the assault occurred because corrections officers left the dorm unguarded while the cube officer slept. (Doc. 20 at 9).  From this platform, the plaintiff declares this incident notified

Sanders of the pervasive risk of harm at SCCF and that guards were leaving their posts unmanned as early as 2006 or 2007.  (Doc. 20 at 9).  Moreover, "Costello filed a lawsuit alleging Eighth and Fourteenth Amendment claims against Alabama Department of Corrections officials," and the Department of Corrections and Parole Board responded by "mitigat[ing]" a "tailored a remedy" for the violations in the form of "parole."  (Doc. 13 at 12).[10]  The plaintiff then declares "equal protection" and "cruel and unusual punishment" was upheld for Costello and "should be upheld for him."  (Doc. 20 at 10).

The court has examined the plaintiff's pleadings.  (Docs. 1, 3, 13).  Nowhere does the plaintiff identify defendant Sanders as the administrator at the time inmate Costello was attacked, nor does he make any connection between Sanders or any other named defendant with the attack.  Additionally, and as set forth in the objective prong of the analysis, *supra*, the Costello assault is but one incident and it occurred at least four to five years before the time period applicable to the plaintiff's claims in this case.  The same analysis also holds true with regard to the plaintiff's May 2009 assault from a subjective prong standpoint.[11]

---

[10] Because of the way the plaintiff organized his own claims, the magistrate judge considered the Costello incident to be part and parcel of his claim that his sentence had been "undermined." (Doc. 19 at 82-84).

[11] The May 2009 stabbing incident is located in the same section of his pleadings as the Costello incident.  (Doc. 13 at 11-17, Section "L").

The court does find, however, that the time period utilized by the magistrate judge was too narrow.  If Commissioner Thomas himself toured SCCF in March 2012 with members of the press, it stands to reason Thomas was aware of the conditions at SCCF for a period of time before that date.  Thomas blamed the conditions on budget cuts, which is a clear indication they were systemic for purposes of 1915A review.  Since the facility tour occurred in March 2012, the budget cuts to which he was referring had to have been, at the very least, cuts during 2011 and 2012, the years for which the plaintiff claims damages.  Finally, it is a reasonable inference that if Thomas, as the Commissioner of the Department Corrections, was aware of the substantial risks of harm to population inmates at SCCF in 2011-2012, the subordinate defendants were aware of the conditions earlier than that.  The court finds there is a reasonable inference from the facts that notice for the defendants rests on: (1) repeated inmate incidents occurring because security officers habitually failed to man their post in unsafe population dorms, and/or (2) decision(s) to implement a custom or policy of lax security in the unsafe population dorms.

The court also finds that, for screening purposes, the plaintiff has adequately pleaded facts to show the defendants refused to respond reasonably to the known risk.  Construed broadly, the plaintiff asserts the defendants implemented no changes or zero significant changes during the time period at issue.  This is an

unreasonable response to the risk, particularly when it is clear the defendants did not try to implement or enforce the security measures enforced in the honor dorms. The plaintiff's allegations are sufficient to infer that implementation or enforcement of even a portion of the honor dorm security measures in the population dorms would have taken only a modest amount of time, effort and funds, but the defendants continually refused to do so despite the substantial risk of harm to the plaintiff.

### c.  Conclusion

For the reasons set out above, the magistrate judge's report and recommendation is rejected as to this claim.

### 3.  Objections based on whether the plaintiff stated a plausible Fourteenth Amendment conditions of confinement claim

### a.  Substantive Due Process

The plaintiff objects in conclusory fashion to the dismissal of his Fourteenth Amendment substantive due process claim. However, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 813 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).   The Eighth Amendment is specifically

intended to provide a plaintiff relief when unconstitutional conditions of confinement are alleged. The plaintiff objection is overruled.

### b.    Equal Protection

To the extent the plaintiff is attempting to state an Equal Protection claim based upon Costello's circumstances, the claim shall not be considered. The plaintiff did not present such a claim in his pleadings, and was notified on August 14, 2104, that no new amendments would be allowed. (Doc. 14).

Alternatively, the Equal Protection clause does not require that all decisions regarding inmate housing[12] or parole be the same. To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or

---

[12] Although he voices no objections, to the extent the plaintiff may have been attempting to state an Equal Protection claim against defendant Davenport (the plaintiff's allegations are restricted to asserting the claim in behalf of deceased inmate Rutledge) for Davenport's failure to provide the same level of security to population inmates as honor dorm inmates at SCCF, (doc. 1 at 76-77), the plaintiff's claim also fails. The plaintiff alleges Davenport is "totally responsible for security" [and] reasonable legal safety mandates of the entire prison, yet" he failed to 'equally protect all inmates with the same security as the Faith Based Honor Dorm." (*Id*.). The plaintiff infers population dorms inmates are similarly situated to honor dorm inmates. The only similarities between the two groups are that they both house inmates. The plaintiff's own pleadings show that there are many requirements to be housed in the honor dorm, and these appear to be based on good behavior and rehabilitative lifestyle choices. (*Id*. at 7-8). The pleadings as a whole display the opposite is true of population dorm inmates. These differences show the inmates are not similarly situated. While the plaintiff observes the honor dorms are "predominately white" and the population dorms are "80% black," (*id*.at 6), he does not allege present any facts to show that defendant Davenport purposely decided to provide less security to population inmates on the basis of race or any other constitutionally impermissible reason. Therefore, this claim is due to be dismissed.

some other constitutionally protected basis." *Sweet v. Secretary, Dept. of Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006) (citing *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)).

The plaintiff and inmate Costello are not similarly situated because the plaintiff was not subjected to the vicious assault that purportedly led to Costello's parole. Further, the plaintiff has not alleged facts to establish that any failure to consider him for parole was based on "an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler v. Boles*, 368 U.S. 448, 456, 82 S. Ct. 501, 506 (1962). The law is well settled that the mere differential treatment of inmates fails to constitute a violation of the Equal Protection Clause. *E & T Realty v. Strickland*, 830 F.2d 1107 (11th Cir. 1987); *Jones v. Deese*, 2008 WL 906574 (2008). Thus, the plaintiff's equal protection is due to be dismissed under § 1915A for failure to state a claim.

### 4.    State law claims

Although the plaintiff's objections contain the term 'neglect' and the phrase 'supervisory retention' in connection with his conditions of confinement claims against the SCCF defendants, he does not clearly and succinctly assert that he made state law claims against the defendants and he is objecting to the dismissal of those claims. Review of the plaintiff's pleadings provides little assistance as they

are a jumbled composition of excess and disjointed legal and factual words and phrases.[13]   Regardless, and in this once instance, the court will consider an objection to the dismissal of any intended state law negligence and negligent supervision and retention claims against defendants Sanders, Headley, Davenport, Culliver and Thomas, with the underlying allegations being the unsafe conditions and lack of security at SCCF from 2011 to 2012.

To prove negligence in Alabama, the plaintiff must show "(1) a duty to a

---

[13] The court has perused the plaintiff's pleadings at length to find clearly delineated state law claim(s) against defendants Sanders, Headley, Davenport, Culliver and Thomas pertaining to SCCF conditions in 2011-2012. The plaintiff made no mention of any state tort law claims against Sanders in his complaint. (Doc. 1 at 30-32). The plaintiff did set forth state law claims wrongful death, general negligence, negligent retention and supervision and negligent liability against defendants Headley and Davenport, but these claims were made in behalf of deceased inmate Rutledge (*id.* at 28, 77), and the plaintiff is not authorized to represent another inmate or act in the deceased inmate's behalf. The plaintiff began his claims against defendant Culliver by declaring he was "liable for deliberate indifference, and negligent liability, depriving (sic) the plaintiff of federal guaranteed protections." (*Id.*). In the allegations following, the plaintiff does not mention negligence in his civil claims against Culliver, (*id.*at 63-68), the allegations supporting those civil claims do not specifically concern the conditions of confinement at SCCF (*id.*), and his demand for monetary relief from Culliver is based on the First, Fifth, Eighth and Fourteenth Amendment violations, (*id.* at 68-69). As for defendant Thomas, the plaintiff makes state law tort law claims in Rutledge's behalf, and in his own behalf declares in conclusory fashion that Thomas "is liable for negligent liability, supervisory liability, deliberate indifference, deprived (sic) the plaintiff of 8th and 14th Amendment protections." (*Id.* at 61).

The plaintiff does name the SCCF defendants in Section L of his second amended complaint. (Doc. 13 at 11). The plaintiff does not object to the magistrate judge's interpretation of the claim as presenting the novel theory that various unconstitutional claims in his complaint against the St. Clair defendants and other defendants "undermined" his sentence. Toward the end of Section L, the plaintiff asserts, "The defendants, all, via-supervisory retention, culpable neglect, general negligence[], deliberate indifference, have [and] continue to undermine the original jurisdiction of the Jefferson County Circuit Court sentencing." (*Id.* at 17). He demands a safe environment or a "mitigate[d]. . . remedy from the environment," presumably in reference to the mitigated tailored remedy (parole) received by inmate Costello. (*Id.*). Finally, the plaintiff demands compensatory and punitive from defendants for constitutional violations and state torts. (*Id.*).

foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury." *Crowne Investments, Inc. v. Bryant,* 638 So.2d 873, 878 (Ala. 1994) (citation omitted).  "To sustain a claim for negligent or wanton hiring or supervision, training and/or retention, the plaintiff must establish that the allegedly incompetent employee committed a common-law, Alabama tort." *Leahey v. Franklin Collection Serv., Inc.,* 756 F. Supp. 2d 1322, 1328–29 (N.D. Ala. 2010) (citations and quotation marks omitted).

The facts supporting the Eighth Amendment claim against defendants Sanders, Headley, Davenport, Culliver and Thomas concerning the unsafe and undersecured conditions in SCCF population dorms between 2011-2012 are sufficient to state plausible negligence and negligent supervision claims against the defendants for breach of a legal duty owed to him, *i.e.,* maintaining a relatively safe and secure environment for the inmates in their custody.  As a proximate cause of the breach, the plaintiff alleges he suffered harm by "indefinite living in a penitentiary subjected to death, [and] constant imminent threat to life, for lack of reasonable safety and security."  (Doc. 13 at 11).  *See AALAR, Ltd., Inc. v. Francis,* 716 So. 2d 1141, 1147 (Ala. 1998) ("[T]he current state of Alabama law . . . limits recovery for emotional injury to those plaintiffs who sustain a physical injury as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct.").  Accordingly, defendants Sanders, Headley,

Davenport, Culliver and Thomas shall be directed to respond to the state law negligence and negligent supervision claims against them.

## II.   CONCLUSION

Having carefully reviewed and considered *de novo* all the materials in the court file, including the report and recommendation, and the objections thereto, the magistrate judge's report is hereby **ADOPTED** and the recommendation is **ACCEPTED** with regard to all claims against all defendants **EXCEPT:** (1) the plaintiff's Eighth Amendment claims against defendants Sanders, Headley, Davenport, Culliver, and Thomas for deliberate indifference to unsafe and undersecured conditions in the population dorms of St. Clair Correctional Facility in 2011 and 2012; and (2) the plaintiff's negligence and negligent supervision claims against defendants Sanders, Headley, Davenport, Culliver, and Thomas for breaching their duties to provide safe and secured conditions in the population dorms of St. Clair Correctional Facility in 2011 and 2012.

The report and recommendation is **REJECTED** with regard to the excepted Eighth Amendment claims for the reasons set out in this order.

The court **ORDERS** that all claims against all defendants are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915A(b), except:

(1)    the First Amendment retaliation claims against defendants Brown and Headley,

(2)     the First Amendment conspiracy to retaliate claims against defendants Brown, Sanders and Richie,

(3)     the Procedural Due Process claims related to the plaintiff's indefinite isolation segregation against defendants Glass, Despane, White, Hetzel, Bonner, Stinson, Hicks, Specks and Miree, and

(4)     the Eighth Amendment, negligence and negligent supervision claims against defendants Sanders, Headley, Davenport, Culliver and Thomas for the unsafe and undersecured conditions at St. Clair Correctional Facility from 2011 to 2012.

The court further **ORDERS** that the remaining claims are **REFERRED** to the magistrate judge for further proceedings.

**DONE** AND **ORDERED** ON MARCH 27, 2017.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704